*NOT FOR PUBLICATION*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE HUMAN TISSUE PRODUCTS LIABILITY LITIGATION** | Civ. No. 06-135<br>MDL No. 1763 |
| **THIS DOCUMENT RELATES TO:**<br><br>**LINDA GRAVES, MATTHEW GRAVES, DAVID GRAVES, MARIAN TANGHE, ARTHUR TANGHE, CLARA GRAVES and ALBERT GRAVES,**<br><br>Plaintiffs,<br><br>v.<br><br>**BIOMEDICAL TISSUE SERVICES, LTD., MICHAEL MASTROMARINO, THOMAS E. BURGER FUNERAL HOME, INC., THOMAS E. BURGER, JASON GANO, REGENERATION TECHNOLOGIES, INC., LIFECELL CORP., TUTOGEN MEDICAL, INC., BLOOD & TISSUE CENTER OF CENTRAL TX, and LOST MOUNTAIN TISSUE BANK,**<br><br>Defendants. | Civ. No. 06-5655<br><br><br>OPINION<br><br>HON. WILLIAM J. MARTINI |

**MARTINI, U.S.D.J.**

This is an action brought by the relatives of Bradley Graves ("Graves") who claim

that the defendants harvested and processed bones and tissue from Graves's body without

proper consent.[1]  Presently before the Court is a motion for summary judgment filed by

the Blood and Tissue Center of Central Texas ("BTCCT"), a tissue bank that allegedly

processed Graves's bones and tissue after they were harvested from his body.  The

plaintiffs oppose the motion for summary judgment.  For the following reasons, the

motion for summary judgment filed by BTCCT is **GRANTED**, and the plaintiffs'

Complaint against BTCCT is **DISMISSED** without prejudice.

## BACKGROUND & PROCEDURAL HISTORY

The plaintiffs in this action are the wife, two sons, parents, and parents-in-law of

Graves.  As stated in the Complaint, Graves died on July 31, 2005 from complications

arising from cancer.  Following his death, the plaintiffs contracted with Thomas E.

Burger Funeral Home, Inc. ("Burger Funeral Home") for funeral arrangements and

cremation services.  The plaintiffs allege that Burger Funeral Home, after taking

possession of Graves's body for cremation, allowed Biomedical Tissue Services, Inc.

("BTS") and Michael Mastromarino to harvest (*i.e.*, remove) bones and tissue from

Graves's body for medical research and implantation.  The plaintiffs allege that neither

they nor Graves consented to the harvesting of the body parts.  Furthermore, the plaintiffs

claim that the funeral homes never disclosed that such harvesting would occur.

The plaintiffs allege that the defendants' actions caused them pain and suffering as

well as emotional distress.  Thus, they instituted this action on June 30, 2006 by filing a

---

[1]  Criminal proceedings against certain of the defendants related to the alleged illegal harvesting
of body parts are currently pending in state courts.

complaint in the State of New York Supreme Court, Monroe County.  The defendants

removed this case to the United States District Court for the Western District of New

York, and then, the Judicial Panel on Multidistrict Litigation transferred the action to this

Court for consolidation with *In re Human Tissue Products Liability Litigation*, MDL No.

1763.

In January 2007, defendants BTCCT, LifeCell Corp. ("LifeCell"), Tutogen

Medical, Inc. ("Tutogen"), Regeneration Technologies, Inc. ("RTI"), and Lost Mountain

Tissue Bank ("Lost Mountain") (collectively, the "Tissue Bank Defendants") filed

separate motions for summary judgment pursuant to Fed. R. Civ. P. 56.  Each of these

defendants is a tissue bank that allegedly received tissue and body parts from BTS.

The plaintiffs' Complaint, while containing ten counts, only names the Tissue

Bank Defendants in four of the counts.  The plaintiffs contend that the Tissue Bank

Defendants willfully disregarded federal and state regulations "regarding the procedures

for obtaining consent, harvesting organs and/or tissue, testing harvested organs and/or

tissue, and transplant of harvested organs and/or tissue."  (Compl. ¶¶ 34, 37.)

Additionally, the Complaint states that the Tissue Bank Defendants failed in their legal

duty to ensure that proper consents were obtained and that proper harvesting procedures

were followed.  (*Id*. ¶¶ 67-69, 75-77.)  The remaining counts of the Complaint pertain to

the other non-moving defendants.

Each of the Tissue Bank Defendants has moved for summary judgment on Counts

One, Two, Eight, and Nine by relying primarily on the New York Anatomical Gift Act,

N.Y. Pub. Health Law §§ 4300-4309.  In addition, BTCCT argues that it never received

tissue from Graves and, therefore, plaintiffs lack standing to sue.  The plaintiffs oppose

the motions.  In this Opinion, the Court narrowly addresses the summary judgment

motion filed by BTCCT.[2]

## STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The burden of showing that no

genuine issue of material fact exists rests initially on the moving party.  *See Celotex Corp.

v. Catrett*, 477 U.S. 317, 323 (1986).  A litigant may discharge this burden by exposing

"the absence of evidence to support the nonmoving party's case."  *Id*. at 325.  In

evaluating a summary judgment motion, a court must view all evidence in the light most

favorable to the nonmoving party.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

Corp.*, 475 U.S. 574, 587 (1986); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573

(3d Cir. 1976).

Once the moving party has made a properly supported motion for summary

judgment, the burden shifts to the non-moving party to "set forth specific facts showing

---

[2]  The other pending motions are addressed in a separate Opinion of this Court.

that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A party cannot simply rest on the allegations contained in his complaint in opposition to a properly supported summary judgment motion. Fed. R. Civ. P. 56 (providing that the party opposing summary judgment may not rest upon the mere allegations or denials of the pleading but, by affidavits or as otherwise provided in the rule, must set forth specific facts showing that there is a genuine issue for trial).

If the non-moving party fails to sufficiently support its opposition by affidavits, depositions, answers to interrogatories, admissions on file, and pleadings, courts may nevertheless deny or stay summary judgment if "it appear[s] from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition." Fed. R. Civ. P. 56(f). A party moving pursuant to Rule 56(f), however, must submit an affidavit explaining "what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *Doe v. Abington Friends School*, 480 F.3d 252, 256 (3d Cir. 2007) (citations omitted). For purposes of Rule 56(f), a mere legal memorandum is insufficient, and failure to comply with Rule 56(f) in all, but the most exceptional cases, is "fatal to a claim of insufficient discovery on appeal." *Bradley v. United States*, 299 F.3d 197, 207 (3d Cir. 2002); *see also Radich v. Goode*, 886 F.2d 1391, 1394 (3d Cir. 1989).

## DISCUSSION

In its motion for summary judgment, BTCCT argues that the plaintiffs lack

standing to assert any claims against it.[3]  After a search of its records, BTCCT asserts, by

way of an affidavit, that it never received any tissue from Graves.  (Unger Aff. ¶ 2).

BTCCT contends, therefore, that the plaintiffs cannot establish a causal connection

between BTCCT's actions and any injury suffered, and that the plaintiffs lack standing to

sue.  (Def.'s Reply Br. 3.)  The Court agrees.[4]

Standing is the "irreducible constitutional minimum" necessary to make a

justiciable "case" or "controversy" under Article 3 of the Constitution.  *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  To establish standing, the plaintiff bears

the burden of demonstrating, among others, "a causal connection between the injury and

the conduct complained of."  *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d

Cir. 2006) (citing *United States v. Hayes*, 515 U.S. 737, 742-43 (1995); *see also Danvers*

*Motor Corp. v. Ford Motor Co.*, 432 F.3d 286, 290-91 (3d Cir. 2005) (citing *Lujan*, 504

U.S. at 560-61); *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir.

---

[3]  The Court need not address BTCCT's other defenses as they are discussed in the Court's related Opinion addressing the summary judgment motions of defendants LifeCell, RTI, Lost Mountain, and Tutogen.

[4]  Additionally, the Court finds, as BTCCT urges, that the plaintiffs fail to support their causes of action against BTCCT since they cannot establish, nor do they attest by way of an affidavit, that BTCCT caused their alleged injuries.

2003).  This requirement of a causal link means that the alleged harm to the plaintiffs

must be "traceable to an action of the defendants."  *Pitt News v. Fisher*, 215 F.3d 354,

360 (3d Cir. 2000).  At the summary judgment stage, the plaintiffs "may not rest upon the

mere allegations or denials of the adverse party's pleading" but must set forth "specific

facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

　　In this case, the plaintiffs have not met their burden under Rule 56.  In the

Complaint, the plaintiffs allege that BTCCT caused them pain and suffering by BTCCT's

willful disregard of federal and state regulations relating to the harvesting of tissue and

organs, and by BTCCT's negligence in ensuring that proper consents were obtained

before harvesting Graves's tissue.  (Compl. ¶¶ 35, 38, 69, 76.)  BTCCT, by filing of an

affidavit disclaiming any involvement in the harvesting or processing of Graves's body or

body parts, has appropriately shifted the burden back to the plaintiffs to establish some

link between its conduct and the alleged harm to the plaintiffs.[5]  *See* Fed. R. Civ. P. 56(e).

　　In response, the plaintiffs have failed to provide any affirmative evidence of

BTCCT's involvement.  Instead of challenging the accuracy or truthfulness of BTCCT's

affidavit facts, the plaintiffs argue that there has not yet been an "opportunity to take

discovery of [BTCCT] to determine the factual basis for its claim that it received no

tissue from Mr. Graves and on that basis opposes the propriety of summary judgment at

---

[5]  BTCCT submitted an affidavit by its Director of Quality Assurance and Regulatory Affairs stating that a search of BTCCT's records was completed under her supervision, and that it was concluded that BTCCT never received nor processed any tissue from Graves.  (Unger Aff. ¶ 2.)

this juncture." (Pls.' Br. 14.)  Therefore, the plaintiffs seek denial of summary judgment

under Rule 56(f).

Rule 56(f) allows courts to deny or delay summary judgment when a grant of

summary judgment would be premature due to a lack of discovery on facts essential to

justify a party's opposition to the motion.  In setting forth its Rule 56(f) affidavit, the

opposing party's duties include explaining "how, if uncovered, [the information sought]

would preclude summary judgment." *Abington Friends School*, 480 F.3d at 256.  First,

the Court notes that the plaintiffs have failed to articulate what specific facts they seek by

way of further discovery, and how this information would preclude summary judgment.

*See e.g.*, *Wheatley v. Guardian Life Ins. Co.*, No. 06-5228, 2007 U.S. Dist. LEXIS 72589,

at *12 (D.N.J. Sept. 28, 2007) (granting summary judgment where the plaintiff's affidavit

failed to explain how the specific information requested would preclude summary

judgment).  Second, the Court finds that discovery into the factual basis of BTCCT's

affidavit, even if allowed, would be insufficient for the plaintiffs to raise a material issue

of fact in this case.

BTCCT's affidavit, whose accuracy and truthfulness the plaintiffs do not

challenge, states that it possesses no records indicating that BTCCT received or processed

Graves's tissue.  It is unclear how plaintiffs' non-specific request for the factual basis

behind BTCCT's claim that it lacks any record of Graves would establish plaintiffs'

standing to assert claims against BTCCT, unless BTCCT perjured itself–an argument that

the plaintiffs do not advance.

The Court is cognizant that discovery, except for the limited discovery related to the donor records of Graves, was stayed in this case by order of the Court. The Court is further mindful that the "summary judgment process presupposes the existence of an adequate record," and therefore, district courts "grant properly filed Rule 56(f) motions as a matter of course." *Abington Friends School*, 480 F.3d at 257. In the instant case, however, the plaintiffs have not established any specific justification for granting relief under Rule 56(f) insofar as they have failed to identify what specific information is sought and how this information, if obtained, would preclude summary judgment. As the plaintiffs fail to raise any issue of material fact regarding the standing of the plaintiffs, the Court will grant BTCCT's summary judgment motion.

## CONCLUSION

For the reasons stated above, BTCCT's motion for summary judgment is **GRANTED**. Accordingly, the plaintiffs' Complaint against BTCCT is **DISMISSED** without prejudice. An appropriate Order accompanies this Opinion.

s/William J. Martini
**William J. Martini, U.S.D.J.**

Dated: November 13, 2007