# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE HUMAN TISSUE PRODUCTS LIABILITY LITIGATION**<br><br>**THIS DOCUMENT RELATES TO: ALL "FAMILY CASES"** | **Hon. William J. Martini**<br>**Civil Action No. 06-135 (WJM)**<br>**MDL No. 1763**<br><br>**<u>OPINION</u>** |

This matter comes before the Court by way of Plaintiffs' motion to compel the production of certain privileged documents. The Court has considered the submissions made in support of and in opposition to the instant motion. No oral argument was heard. Fed. R. Civ. P. 78. Based on the reasons that follow, Plaintiffs' motion is granted in part and denied in part.

## <u>BACKGROUND</u>

This action arises from a criminal enterprise by Biomedical Tissue Services, Ltd. ("BTS") and its principal Michael Mastromarino ("Mastromarino") to harvest tissue from human corpses without obtaining proper consents and following appropriate regulations. See In re Human Tissue Prods. Liab. Litig., No. 06-135, 2008 WL 4665765, at *1 (D.N.J. Oct. 22, 2008). Plaintiffs in this multidistrict litigation ("MDL") include recipients of processed tissue supplied by BTS (collectively referred to as "recipient cases"), and relatives of the deceased donors (collectively referred to as "family cases"). Defendants include the "principals in the criminal operation, the funeral homes that provided BTS access to the corpses, the companies who processed tissue recovered from cadavers by BTS into various medical products, the distributors of the processed tissue products, and the hospitals and medical personnel who transplanted the processed tissue product." Id.

There are currently six family cases pending in this MDL.  Four were originally filed in state or federal court in New York.[1]  One was originally filed in the District of New Jersey,[2] and one was filed in the Eastern District of Pennsylvania.[3]  There are also approximately fifty-one (51) family cases pending in state courts in New York, New Jersey and Pennsylvania.

Defendant RTI ("RTI" or "Defendant") filed a motion for summary judgment in January 2007.  See CM/ECF Docket Entry Nos. 209 (incorporating by reference brief filed by co-defendant LifeCell); 213.  At that time, Defendant argued that the claims asserted by Plaintiffs in Count Six of the Amended Complaint should be dismissed inasmuch as they are "barred by the good faith immunity defense provided by New York's version of the Uniform Anatomical Gift Act."  CM/ECF Docket Entry No. 209.  In particular, Defendant argued that "a party that relies on facially valid documentation of consent to donation, provided by another party, is immune from suits brought by the kin of the donor alleging emotional distress and other common law torts premised on lack of proper consent to the donation."  By way of Opinion and Order dated November 13, 2007, the Honorable William J. Martini, U.S.D.J., denied Defendant's motion for summary judgment on the basis that a determination on the issue of good faith would be premature given that discovery had not commenced on the issue of whether the Tissue Bank Defendants were aware that the consent

---

[1] Kennedy-McInnis v. BioMedical Tissue Servs., Ltd., Civil Action No. 06-5140; Graves v. BioMedical Tissue Servs., Ltd., Civil Action No. 06-5655; Fox-Zeiner v. BioMedical Tissue Servs., Ltd., Civil Action No. 07-3837; Michelli v. BioMedical Tissue Servs., Ltd., Civil Action No. 06-4134.

[2] Fetzer v. BioMedical Tissue Servs., Ltd., Civil Action No. 08-3786.

[3] Wilson v. BioMedical Tissue Servs., Ltd., Civil Action No. 08-5306.

2

forms were fabricated.[4]  See In re Human Tissue Prods. Liab. Litig., No. 06-135, 2007 WL 3510752, at *5 (D.N.J. Nov. 13, 2007).   In doing so, the Court explained:

> To accept the Tissue Bank Defendants' argument, that summary judgment could be granted based solely on the consent forms without examining whether the Tissue Bank Defendants knew that the consent forms were invalid, is to suggest that the Gift Act insulates potentially complicit tissue banks as long as they have received a completed consent form, even if there is evidence that the tissue banks knew, or had constructive knowledge, that the forms had been falsified. Such an interpretation would contravene the clear language of the Gift Act.

Id.

Discovery on the narrow issue of good faith immunity has been open since December 2007.[5] See CM/ECF Docket Entry No. 545.  Currently before the Court is a motion to compel RTI to produce certain documents listed in its privilege log.  Plaintiffs argue, generally, that RTI has waived the attorney-client and/or attorney work product privilege  by raising a defense regarding its own good faith.   In the alternative, Plaintiffs request that the Court conduct an in camera review of said documents to determine whether they are, in fact, privileged and, therefore, whether they should be produced.  RTI opposes Plaintiffs' motion on the basis that all documents listed on RTI's privilege log are protected by the attorney-client and/or work product privileges or are protected from disclosure because they are related to a grand jury investigation.

---

[4] The Court also denied similar motions for summary judgment filed by the remaining Tissue Bank Defendants, including LifeCell Corp. ("LifeCell"), Lost Mountain Tissue Bank ("Lost Mountain"), and Tutogen Medical, Inc. ("Tutogen").  See In re Human Tissue Prods. Liab. Litig., No. 06-135, 2007 WL 3510752, at *1 (D.N.J. Nov. 13, 2007).

[5] Discovery closed on October 1, 2008.  See CM/ECF Docket Entry No. 634.  It should be noted that the entire case was stayed for a period of ninety (90) days in March 2008 while the parties engaged in mediation.  See CM/ECF Docket Entry No. 607.

This motion was originally filed by Plaintiffs on October 9, 2008 in New York state court. Given the implications of Plaintiffs' motion to compel on this MDL, this Court has been asked to engage in a coordinated resolution of Plaintiffs' motion.[6]  As a result, Plaintiffs' motion was filed in this action on October 31, 2008 and is now pending before this Court.  See CM/ECF Docket Entry No. 698.  At issue are approximately 366 documents,[7] which have been subdivided into nine categories by defense counsel.  In the interest of judicial efficiency,  this Court has directed the parties to submit proposed samples from each of the nine categories of documents in dispute.  Given the quantity of documents involved and the fact that the parties have argued purely legal issues with respect to categories of documents, the Court concludes that it is appropriate to decide the motion as presented.

## LEGAL STANDARD

### I.    Choice of Law

When a case is based on federal diversity jurisdiction, courts are to decide issues of attorney-client privilege based on state law.  See In re Ford Motor Corp., 110 F.3d 954, 965-66 (3d Cir. 1997).[8]  A federal district court exercising jurisdiction on the basis of diversity generally applies the law of the forum state. See Chem. Leaman Tank Lines, Inc. v. Aetna Casualty and Surety Co., 89 F.3d 976, 983 (3d Cir.1996) (stating that "[a]s a federal court sitting in diversity, we must apply the substantive law of New Jersey.").  However, in the context of a multidistrict litigation such as this

---

[6] See Tr. of conference held before Judge Martini (Oct. 31, 2008) at 53:14-23.

[7] See Def. Br. at 10; Nov. 17, 2008 Letter from Denise Bense, Esq. .

[8] But see United Coal Companies v. Powell Const. Co., 839 F.2d 958, 966 (3d Cir. 1988) ("Unlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard.").

one, the law of the transferor court applies to cases transferred here.  See, e.g., Van Dusen v. Barrack, 376 U.S. 612, 633-634 (1964); Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993); In re Sunrise Sec. Litig., 698 F. Supp. 1256, 1261 (E.D. Pa. 1988).

This motion was originally filed in New York state court.  The parties' original briefs rely almost exclusively on New York law.  However, this motion will have implications on all the family cases pending in this MDL, which include cases transferred from New York, Pennsylvania and those cases which were originally brought in New Jersey.  Moreover, this Court has been asked to issue a global decision on this motion.  It is, therefore, unclear, whether the law of New York, Pennsylvania, New Jersey (or Florida) should be applied.[9]  The Court need not reach this potentially thorny issue because the law as to the attorney-client privilege in New York does not differ in any material way from that in New Jersey, Pennsylvania or Florida for purposes of the instant motion. See, e.g., In re Ford Motor Corp., 110 F.3d at 965-66 (noting that "the law as to attorney-client privilege in Pennsylvania does not differ in any significant way from that in Michigan. The elements of the attorney-client privilege are well-known and are not, in any material respect, disputed here. We need not, therefore, dwell on them, except to note their basic contours in Pennsylvania and Michigan.").  Accordingly, for purposes of efficiency, the Court will rely predominately on New York law in addressing Plaintiffs' motion. See generally Spectrum Sys. Intern. Corp. v. Chem. Bank,

---

[9] Although Defendant concedes that the family cases were transferred and/or originated from New York, New Jersey and Pennsylvania, Defendant argues – in its supplemental brief – that because all privileged communications took place in Florida, Florida law should be considered as well.  Defendant also makes the related argument that, if a conflict of law exists on the privilege issue, Florida law should apply.  Defendant does not argue, however, that a conflict of law actually exists.  Plaintiffs have taken no position on this issue.  Having found that, for purposes of this motion, there is no significant difference between the attorney-client privilege law in New York, Pennsylvania, New Jersey or Florida, the Court need not reach this issue.

78 N.Y.2d 371, 377, 581 N.E.2d 1055, 1060 (1991) (referring to New York's attorney-client privilege statute as a "mere re-enactment of the common-law rule").   Where helpful, the Court will also turn to the laws of New Jersey, Pennsylvania and Florida in addressing the more discrete issues raised by the parties.

## II.    Privilege Law Generally

The attorney-client privilege protects confidential communications between a client and an attorney made in the course of a professional relationship.  See Spectrum Sys., 78 N.Y.2d at 377 (citing N.Y.C.P.L.R. § 4503(a)).  "The communication itself must be primarily or predominantly of a legal character."  Id.  The attorney-client privilege is limited to communications – not underlying facts.  See id. at 377; see also Upjohn Co. v. United States, 449 U.S. 383, 394 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney . . . .").  The person asserting the privilege with respect to a particular communication bears the burden of proving that it applies.  See, e.g., Priest v. Hennessy, 51 N.Y.2d 62, 69, 431 N.Y.S.2d 511, 514 (1980).  Whether or not a particular document is protected is "necessarily a fact-specific determination." Spectrum Sys., 78 N.Y.2d at 378.

"Unlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard." United Coal Cos. v. Powell Const. Co., 839 F.2d 958, 966 (3d Cir. 1988).  The federal work-product doctrine is set forth in Federal Rule of Civil Procedure 26(b)(3), which provides:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

6

(i) they are otherwise discoverable under Rule 26(b)(1); and

(ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3).  The doctrine itself "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." In re Cendant Corp. Sec. Litig., 343 F.3d 658, 661-62 (3d Cir. 2003) (quoting United States v. Nobles, 422 U.S. 225, 238 n. 11, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975)).  The party asserting work product protection bears the burden to show that the doctrine applies.  See Conoco, Inc. v. U.S. Dep't of Justice, 687 F.2d 724, 730 (3d Cir. 1982).  With this framework in mind, the Court turns now to the specific categories of documents at issue.

## ANALYSIS

**I.      Category One – Communications Regarding Background Investigation of Mastromarino**

Roger Rose, Executive Vice President of RTI,[10] testified that, in early 2003, RTI retained the law firm of Holland and Knight to conduct a background investigation of Michael Mastromarino (hereinafter "Mastromarino") based on his abusive behavior toward certain RTI employees, and rumors circulating concerning his alleged involvement in organized crime. See Rose Dep. Tr. (Sept. 17, 2008) at 57:9-58:14.  Plaintiffs now seek production of ten (10) documents related to this background investigation which RTI claims are protected by the attorney-client and/or attorney work

---

[10] See Rose Tr. (Sept. 17, 2008) at 30:10-24.

product privilege.[11]  Plaintiffs do not dispute that such documents are, in fact, privileged.  Instead, Plaintiffs argue that in order "[t]o maintain their Good Faith Immunity Defense, it is clear that RTI will use Holland and Knight's investigation and what they learned from the investigation. [Therefore], any attorney-client privilege or work-product privilege is waived where the information of the investigation is used as a defense to the lawsuit." (Pl. Br. at 7).  RTI opposes Plaintiffs' request on the basis that they have not raised the advice of counsel as an affirmative defense, nor have they affirmatively placed the investigations and/or related communications at issue through their actions. (Def.  Br. at 28-30).  RTI also represents that it is not relying upon such privileged communications in support of its good faith immunity defense, nor would application of the privilege deprive Plaintiffs of any vital information in this case. (Id. at 31-34).  Because Plaintiffs do not dispute the privileged nature of the ten (10) documents at issue, the Court will focus its analysis on whether any such privilege has been waived.

### A.    Relevance

Before assessing whether a waiver has occurred, the Court must, as a threshold matter, determine whether the information sought by Plaintiffs is relevant.[12]  The scope of discovery in federal courts is governed by Federal Rule of Civil Procedure 26(b)(1). Rule 26(b)(1) provides, in relevant part, the following:

---

[11] See RTIP0063-0072.  Because there are only ten (10) documents at issue in this category, the parties have requested that all ten (10) be reviewed in camera.  Although the Court directed each party to submit a sample of three (3) documents from each category for the Court's consideration, the Court will, as a courtesy to the parties, consider all ten (10) documents submitted with respect to this category. See Tr. of hearing held before this Court (Nov. 10, 2008) at 50: 3-8.

[12] See generally Tr. of hearing held before this Court (Nov. 10, 2008) at 32:22-33:5 ("You know, I just want everyone to keep in mind the scope of what we're doing now from a relevance" perspective).

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense — including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

By way of Order dated December 17, 2007, the parties were permitted to conduct discovery on the narrow issue of good faith immunity. See CM/ECF Docket Entry No. 545. At that time, the parties were reminded that such discovery should closely track the issues in this case – namely whether the Tissue Bank Defendants knew, or had constructive knowledge, that the consent forms had been falsified. See id.; In re Human Tissue Prods. Liab. Litig., 2007 WL 3510752, at *5. Thus, any discovery requests which go beyond the scope of the good faith immunity defense violate this Court's December 17, 2007 Order and will not be permitted.

Turning now to the ten (10) documents at issue in this category, the Court notes that RTI does not dispute the relevance of such documents. In any event, the Court has reviewed such documents in camera and, based on the reasons set forth below, finds that they are sufficiently relevant to the limited scope of discovery in this matter.

### B.     Implied Waiver

#### (i).     Implied Waiver Law

It goes without saying that privilege may not be used both as a sword and a shield. See, e.g., Farrow v. Allen, 194 A.D.2d 40, 45-46, 608 N.Y.S.2d 1, 3 (App. Div. 1993) (recognizing well-known principle that it is "unfair for the opposing party in a litigated controversy to have the patient

9

'use this privilege both as a sword and a shield, to waive when it inures to her advantage, and wield when it does not.' ") (citing <u>McKinney v. Grand St., Prospect Park & Flatbush R.R.</u>, 104 N.Y. 352, 355 (1887)).[13]  In other words, "a litigant cannot at one and the same time make use of those privileged communications which support his position while hoping to maintain the privilege as those communications which undercut his legal position." 1 Edna Selan Epstein, The Attorney-Client Privilege and the Work Product Doctrine 508 (5th ed. 2007) ("Epstein").

In this regard, courts have found an implied waiver of the attorney-client and/or attorney work product privilege where a client affirmatively places otherwise privileged information at issue in the case.  For instance, "under certain circumstances, the court may infer that the attorney-client privilege has been waived by the client by his raising a defense regarding his own good faith, the validity of which can only be tested by invasion of the attorney-client privilege." <u>Village Bd. of Village of Pleasantville v. Rattner</u>, 130 A.D.2d 654, 655, 515 N.Y.S.2d 585, 586 (App. Div. 1987); <u>see also</u> <u>Drizin v. Sprint Corp.</u>, 3 A.D.3d 388, 389, 771 N.Y.S.2d 82, 84 (App. Div. 2004)("Plaintiff's assertion of the work product privilege with respect to records of the inquiries of his counsel's investigator in contemplation of litigation has been waived by plaintiff's affirmative use of selected, purportedly representative, tape recordings and transcripts of the investigator's calls to defendants' 'knock-off' numbers."); <u>see generally</u> <u>Payton v. N.J. Tpk. Auth.</u>, 148 N.J. 524, 552-53 (1997) ("If the trial court should determine that the privilege applies to particular aspects of the investigation-for example, specific parts of the investigation after plaintiff filed this lawsuit-it then

---

[13] <u>See</u> <u>also</u> <u>Jenney v. Airdata Wiman, Inc.</u>, 846 So.2d 664, 668 (Fla. Dist. Ct. App. 2003) ("Under the sword and shield doctrine, a party who raises a claim that will <u>necessarily</u> require proof by way of a privileged communication cannot insist that the communication is privileged.") (emphasis in original).

must determine whether defendant has waived the privilege by raising the investigation as an affirmative defense. A party may not abuse a privilege, including the attorney-client privilege, by asserting a claim or defense and then refusing to provide the information underlying that claim or defense based on the privilege."); <u>Bonds v. Bonds</u>, 455 Pa. Super. 610, 615, 689 A.2d 275, 277 (1997) (noting that "the appellate courts of this jurisdiction have found [a waiver of the attorney-client privilege] . . .when the communication is made in the presence of or communicated to a third party or to the court, when the client relies on the attorney's advice as an affirmative defense, or when the confidential information is placed at issue."); <u>Home Ins. Co. v. Advance Machine Co.</u>, 443 So.2d 165, 168 (Fla. Dist. Ct. App. 1983) (recognizing that "it is the rule in Florida that a party who bases a claim on matters which would be privileged, the proof of which will necessitate the introduction of privileged matter into evidence, and then attempts to raise the privilege so as to thwart discovery, may be deemed to have waived that privilege").

There are several factors that courts have considered in determining whether a waiver by affirmative reliance (or an "at issue" waiver) has occurred. <u>See</u> <u>generally</u> Epstein at 509. These include: "(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense." <u>Hearn v. Rhay</u>, 68 F.R.D. 574, 581 (E.D. Wash. 1975); <u>see</u> <u>also Goldberg v. Hirschberg</u>, 10 Misc.3d 292, 295-99, 806 N.Y.S.2d 333, 335-38 (N.Y. Sup. Ct. 2005) (applying <u>Hearn</u> factors and finding that disclosure of privileged attorney-client

communications was required).[14]

Other courts have focused on overriding fairness considerations in assessing whether an implied waiver has occurred.  See, e.g., Goldberg, 806 N.Y.S. 2d at 335 ("The sanctity of the attorney-client privilege notwithstanding, '[it] may implicitly be waived when [a party] asserts a claim that in fairness requires examination of protected communications.' ") (quoting United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991)); United Jersey Bank v. Wolosoff, 483 A.2d 821, 828, 196 N.J. Super. 553, 567 (App. Div. 1984) ("We are persuaded that 'when confidential communications are made a material issue in a judicial proceeding, fairness demands waiver of the privilege.' "); In re Hillsborough Holdings Corp., 176 B.R. 223, 238-39 (M.D. Fla. 1994) ("A party waives the attorney-client and accountant-client privileges which attach to various communications if that party 'injects into the case an issue that in fairness requires an examination of otherwise protected communications.' ").[15]  Whether fairness requires disclosure is decided "on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted." In re Grand Jury Proceedings, 219 F.3d 175, 183 (2d Cir. 2000).

---

[14] See generally Rhone-Poulence Inc. v. Home Indem. Co., 32 F.3d 851, 863 (3d Cir. 1994) (noting that "[t]he advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication.").

[15] See also Tr. of hearing held before this Court (Nov. 10, 2008) at 28: 22-25 ("And the final sort of philosophical point, if you read all the cases and the treatises on this . . . it really on some level comes down to a fairness consideration.  There's a fairness tension that this Court is going to have to address.").

(ii).    **Implied Waiver Analysis**

Turning now to the facts of this case, although RTI represents that it is not relying on the advice of counsel or any other privileged communication – including the background investigation of Mastromarino – in support of its good faith immunity defense, based on the reasons that follow, the Court finds that such reliance is implicit to RTI's defense.  See generally Epstein at 529.

It is undisputed that RTI has affirmatively relied on the good faith immunity defense provided by New York's version of the Uniform Anatomical Gift Act.  See CM/ECF Docket Entry No. 209. Judge Martini has defined the relevant inquiry upon which this defense will rest – namely, whether "the tissue banks knew, or had constructive knowledge, that the forms had been falsified."  In re Human Tissue Prods. Liab. Litig., 2007 WL 3510752, at *5.  "Constructive knowledge is 'knowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person.' "  In re Kensington Intern. Ltd., 368 F.3d 289, 313 (3d Cir. 2004)(citing to BLACK'S LAW DICTIONARY 876 (7th ed.1999)).[16]  Thus, in order to succeed on their good faith immunity defense, RTI will need to show that it did not know – and that one using reasonable care under the circumstances should not have known – that the consent forms submitted by Mastromarino had been falsified.

In this regard, RTI employees Roger Rose and Caroline Hartill testified – at length – about the concerns RTI had with doing business with Mastromarino as early as "the first quarter of 2003." See Rose Dep. Tr. (Sept. 17, 2008) at 53:10-12.  For instance, Roger Rose, Executive Vice President of RTI, testified that: (a) based on Mastromarino's abusive behavior and alleged ties to organized

---

[16] The Court's reference to one interpretation of the term "constructive knowledge" has no bearing on how Judge Martini will ultimately construe this term in this particular matter.

crime, RTI employees began questioning whether they should continue doing business with Mastromarino as early as October 2002;[17] (b) in light of their concerns, RTI retained the law firm of Holland & Knight to do a background check of Mastromarino in early 2003;[18] (c) the results of said investigation were given to Rose over the phone;[19] (d) other than learning about Mastromarino's drug problems, there was no additional "negative information" that he learned as a result of the background investigation;[20] and (e) as a result, "nothing special" was done at the conclusion of said investigation.[21]   Such testimony not only implies that the fruits of the Mastromarino background investigation were unremarkable, but also affirmatively places at issue RTI's knowledge about the suitability of doing business with Mastromarino from as early as October 2002.[22]   The Court's assessment of RTI's good faith will, therefore, turn on what RTI knew or should have known during the relevant time period.[23]

---

[17] See Rose Dep. Tr. (Sept. 17, 2008) at 155:21-156:10 ("Certainly at the time when I first came on to the company, everyone was asking, that was involved in this . . . should we continue to be working with this guy, which is why I did what we did."); 10:17-19 (explaining that Rose was first employed by RTI in October of 2002).

[18] See Rose Dep. Tr. (Sept. 17, 2008) at 57: 9-58-14.

[19] See Rose Dep. Tr. (Sept. 17, 2008) at 60:21-61-4.

[20] See Rose Dep. Tr. (Sept. 17, 2008) at 61:18-63-6.

[21] See Rose Dep. Tr. (Sept. 17, 2008) at 61:9-17.

[22] This information is especially critical given that Mastromarino was also apparently employed by RTI prior to 2002. Compare Tr. (Nov. 10, 2008) at 85:2-6 ("Mike Mastromarino was an employee of RTI for six months when he first . . . lost his dental license.") with Rose Dep. Tr. (Sept. 17, 2008) at 39:16-40:9 (explaining that RTI had contracted with Mastromarino in 2000 to do "research for a dental product.").

[23] RTI suggests that its good faith should be measured, instead, by an objective standard. (Def. Br. at 16).  While some courts believe that the Legislature, in enacting the Uniform Anatomical Gift Act, created an objective standard by which the good faith of a donee could be measured, in

Having chosen to go beyond mere denial of Plaintiffs' claims, Defendant cannot on the one hand implicitly rely on the fruits of this background investigation as evidence that RTI exercised its diligence and thus had no reasonable basis of knowing that the consent forms submitted by Mastromarino were fabricated, while at the same time depriving Plaintiffs of access to this information on the basis of privilege.  To do so prevents Plaintiffs from effectively challenging RTI's good faith intentions in choosing to continue their business relationship with Mastromarino during the relevant time period, and therefore undercuts the fairness considerations underlying the attorney-client privilege doctrine.  See, e.g., In re Grand Jury Proceedings,  219 F.3d at 182 ("fairness considerations arise when the party attempts to use the privilege both as 'a shield and a sword.' ") (internal quotations omitted); Clark v. United States, 289 U.S. 1, 15 (1933) (recognizing the privilege protecting communications between attorney and client, but noting that "[t]he privilege takes flight if the relation is abused").

Accordingly, it is the finding of this Court that RTI has impliedly waived the attorney-client and/or attorney work product privilege with respect to those communications related to their knowledge about the suitability of doing business with Mastromarino during the relevant time

---

light of Judge Martini's November 13, 2007 ruling, it is clear that an assessment of RTI's good faith will not turn solely on whether they had actual notice that the consent forms had been falsified. Compare Nicoletta v. Rochester Eye and Human Parts Bank, Inc., 136 Misc.2d 1065, 1069, 519 N.Y.S. 2d 928, 931 (N.Y. Sup. Ct. 1987) ("Nowhere in the pleadings or the transcripts of the examinations before trial does it appear that the Eye Bank had actual notice that the gift was opposed by a member of any of the classes of individuals set forth in section 4301. Therefore, the court finds that the Eye Bank, having justifiably relied on a facially valid permission form, acted in good faith in accord with the terms of the Uniform Anatomical Gift Act, and therefore cannot be held liable by the plaintiff for damages in any civil action.") (emphasis added) with In re Human Tissue Prods. Liab. Litig., 2007 WL 3510752, at *5 (defining the relevant inquiry as whether "there is evidence that the tissue banks knew, or had constructive knowledge, that the forms had been falsified.") (emphasis added).

period.[24]  The Court has reviewed the ten (10) documents at issue in this category and finds that each document is, in fact, relevant to this issue.   Plaintiffs' motion to compel is, therefore, granted with respect to documents RTIP0063-0072.  <u>See, e.g.</u>, <u>Courville v. Promedco of Southwest Florida, Inc.</u>, 743 So.2d 41, 42 (Fla. Dist. Ct. App. 1999) ("When the attorney-client privilege is waived regarding a certain matter, the waiver is limited to communications on the same matter."); Epstein at 540 ("When advice of counsel is used as a shield . . . full discovery of the relevant portion of that advice will be permitted.").

### C.    Business Advice

Even assuming, <u>arguendo</u>, that RTI had not impliedly waived the attorney-client privilege with respect to such communications, based on the reasons that follow, Plaintiffs' motion would, in any event, be granted as to Category One because RTI has failed to meet its burden of demonstrating that the communications at issue in this category were rendered primarily for purposes of obtaining legal – as opposed to business – advice.

RTI's privilege log describes the ten (10) documents at issue in this category as counsel's advice regarding Mastromarino's background and/or RTI's contract rights with BTS.  "One who seeks out an attorney for business or personal advice may not assert a privilege as to those communications." <u>Matter of Bekins Record Storage Co., Inc.</u>, 465 N.E.2d 345, 348, 62 N.Y.2d 324, 329 (1984).   As the party asserting the attorney-client privilege, RTI had the burden of establishing that the privilege had been properly invoked.  <u>Salzer ex. rel. Salzer v. Farm Family Life Ins. Co.</u>, 721 280 A.D. 2d 844, 845, 721 N.Y.S. 2d 409, 411 (App. Div. 2001).   Having reviewed RTI's

---

[24] To be clear, this is a <u>very</u> limited waiver.  The Court has based its decision on a limited set of facts; therefore, the specific parameters of this waiver must be assessed on a communication by communication basis.

submissions, the Court finds that RTI has failed to meet this burden.

First and foremost, the Court notes that none of the documents appear to contain any legal research or analysis.  See generally Joe v. Prison Health Servs., Inc., 782 A.2d 24, 32 (Pa. Commw. Ct. 2001) ("The privilege only applies where the client's ultimate goal is legal advice.").  Nor does it appear that any legal advice was sought (or given) therein.[25]  Instead, it appears that counsel was involved solely for the purpose of conducting an investigation of facts and to make strategic recommendations with respect to RTI's business relationship with BTS.  The fact that a law firm retains a private investigator to conduct a background check does not make the investigation report itself  – or the communications related thereto – privileged, particularly when such background checks are performed in the usual course of business.  See, e.g., Spectrum Sys., 78 N.Y.2d at 379 (noting that "an investigative report does not become privileged merely because it was sent to an attorney. Nor is such a report privileged merely because an investigation was conducted by an attorney.").[26]

The testimony of Roger Rose, Executive Vice President of RTI, illustrates this point.  For instance, Rose testified under oath that similar background checks were conducted by RTI during its normal course of business.  See Tr. (Sept. 17, 2008) at 67:15-20 (explaining that similar background checks were done by RTI from "from time to time" prior to doing business with a new tissue recovery service company).  Although it was apparently routine practice for RTI to retain

---

[25] Similarly, the fact that a conversation takes place between a client and an attorney "does not necessarily make it one whose purpose is to obtain legal advice." Epstein at 328.

[26] See also Tr. of hearing held before this Court (Nov. 10, 2008) at 15:20-25 ("It's certainly the Court's view after looking at the law, and that does include Second Circuit cases, that the underlying facts of that investigation and the facts as to what defendant knew about BTS and the parties they were doing business with, as well as the consents, of course, are not privileged").

outside counsel to conduct such background investigations, RTI has given the Court no reason to find that such work could not have been performed by non-lawyers.  See, e.g., Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 603 (8th Cir. 1977) ("The work that Law Firm was employed to perform could have been performed just as readily by non-lawyers aided to the extent necessary by a firm of public accountants. Thus Diversified has failed to satisfy one of the requisites of a successful claim of attorney-client privilege.").  As a result, RTI has failed to establish that the ten (10) communications at issue were made primarily for the purpose of obtaining legal – as opposed to business – advice.  Therefore, Plaintiffs' motion to compel the production of these documents would nevertheless be granted.[27]

## II.  Categories Two Through Nine[28]

Turning now to the remaining categories at issue, the Court must, as a preliminary matter, make several general observations.

First, having reviewed each of the samples selected from categories two through nine, the Court notes that many – if not all – of the documents are irrelevant to the issue of whether RTI knew or had constructive knowledge that the consent forms submitted by Mastromarino during the relevant time period had been falsified.  For instance, categories six and seven contain communications

---

[27] The Court reiterates that this is an alternative basis for granting Plaintiffs' motion with respect to the documents contained in category one.

[28] These include: Category Two – Communications Related to Grand Jury Subpoena and Investigation; Category Three – Communications Regarding Potential Contract with BTS; Category Four – Communications Regarding General Counsel's 2005 Investigation of BTS; Category Five – Communications Related to October 2005 Recall; Category Six – Communications Related to Food and Drug Administration; Category Seven – Communications Regarding Florida Agency for Health Care Administration; Category Eight – Communications Related to Potential Legal Issues in 2005; and Category Nine – Communications Regarding Retention of Outside Counsel. See Nov. 17, 2008 Letter from Denise Bense, Esq.

related to the Food and Drug Administration and the Florida Agency for Health Care Administration. Several of the documents in these categories are from 2001 and therefore predate RTI's receipt of human tissue from BTS. More significantly, <u>none</u> of the documents in these two categories relate <u>in any way</u> to the narrow issue of donor consent.

Second, the parties failed to follow a mutually agreed upon list of categories.[29] Although defense counsel submitted a letter referencing what appears to be nine (9) agreed upon categories of proposed sample documents,[30] Plaintiffs' supplemental brief refers to seventeen (17) categories of documents, which do not readily correspond with the nine (9) submitted by defense counsel. This is not only confusing to the Court but also frustrates the entire process fashioned by the Court for quick and efficient resolution of Plaintiffs' motion.

Third, the parties have submitted far too many samples, and, in doing so, have violated this Court's order.[31] For instance, with respect to Category Two ("Communications Related to Grand Jury Subpoena and Investigation"), the parties have selected a sample of thirty-eight (38) documents for the Court's consideration. The parties have done so despite this Court's clear directive that each party should select <u>three</u> (3) samples from <u>each</u> category. <u>See</u> Tr. (Nov. 10. 2008) at 50:3-8. To select thirty-eight (38) documents in a single category of documents, which are further subdivided into five additional categories by defense counsel, not only violates this Court's Order, but clearly

---

[29] <u>See generally</u> Tr. of hearing held before this Court (Nov. 10, 2008) at 49:13-17 ("I'm going to ask that the parties immediately confer and agree on the categories [of documents] and provide the Court with a list.").

[30] <u>See</u> Nov. 17, 2008 Letter from Denise Bense, Esq.

[31] With the exception of categories six, seven and nine, the parties have submitted <u>well</u> over the allotted six samples as to each category.

contravenes the Court's intent in asking for <u>samples</u>.

Fourth, it appears that many of the documents which RTI has organized into categories two through nine could also fall within the scope of other categories, including Category One.

Finally, despite the Court's admonition at the November 10, 2008 hearing,[32] RTI has failed to establish every element of privilege as to each and every document selected for this Court's review. For instance, RTI argues routinely that several forms of privilege apply, while failing to set forth each element of each form of privilege. Even with respect to the attorney-client privilege alone, as the party asserting the privilege, RTI has the burden of establishing each of these elements on a document by document basis.[33] <u>See, e.g.</u>, <u>United States v. Rockwell Intern.</u>, 897 F.2d 1255, 1265 (3d Cir. 1990). RTI has failed to meet this burden. For instance, as to Category Nine ("Communications Regarding the Retention of Outside Counsel"), RTI argues, generally, that RTIP0383, 0389 and 391 are "privileged communications" and "immune from disclosure" "based on the above." (Def. Br. at 42). RTI's supplemental brief is equally unavailing. <u>See</u> Def. Sup. Br. at 15 n. 16 ("Although samples were designated, RTI offers no further briefing on categories 6 . . . 7 . . .and 9."). Such global assertions of privilege will simply <u>not</u> suffice.[34]

In light of the foregoing, the Court will not rule on Categories Two through Nine, as currently

---

[32] <u>See</u> <u>generally</u> Tr. of hearing held before this Court (Nov. 10, 2008) at 8:16-20 (noting that "some of the problems that I [have] with the motion are that it's done very generally. We're dealing with sort of global assertions of privilege which are not really proper.").

[33] These elements include: (1) a communication, (2) made between privileged persons, (3) in confidence, (4) for purposes of obtaining or providing legal advice. <u>See</u> <u>generally</u> Epstein at 65.

[34] <u>See</u> Tr. (Nov. 10, 2008) at 8:16-20 ("Privilege can't be decided on a global, blanket basis.").

submitted.[35]   The parties are, instead, directed to meet and confer in an attempt to resolve their disputes regarding these categories of documents, in accordance with Local Civil Rule 37.1(a)(1), and bearing in mind this Court's findings with respect to Category One.   To be clear, the Court reiterates the following key aspects of today's holding and directs the parties to be guided accordingly: (a) discovery in this case is limited to information regarding whether RTI knew or had constructive knowledge that the consent forms submitted by Mastromarino had been falsified during the relevant time period; (b) in affirmatively raising the good faith immunity defense, RTI has impliedly the waived the attorney-client and/or attorney work product privilege with respect to certain otherwise privileged communications; and (c) this implied waiver is limited to communications regarding RTI's knowledge about the suitability of doing business with Mastromarino during the relevant time period.[36]   Any such communications must be produced.

The parties should also be guided by the following general principles: (a) underlying facts are never privileged,[37] (b) communications made to an attorney by a client seeking business advice

---

[35] Plaintiffs' motion to compel is therefore denied without prejudice as to said categories.

[36] As previously explained, this is a very limited waiver which must assessed on a communication by communication basis.

[37] See Upjohn, 449 U.S. at 394; Tr. (Nov. 10, 2008) at 10:11-14 ("Now, my impression after carefully reading the papers, the first thing that occurred to me is that underlying facts, regardless of their source, whether it be work product or attorney-client, are not privileged."); 20:9-12 ("I can assure you I'm confident in my statement about the underlying facts of an investigation such as this. [They] are not privileged under any state's law.  They will not be held privileged."); 52:2-6 ("Well, it's the Court's intention – and this is after some consideration of the issue, conference on the issue, that information facts relating to what RTI knew about BTS and Mastromarino during the time frame that they were doing business, should be produced. I don't even think we should be arguing about that.").

are not privileged;[38] (c) merely copying a lawyer on an e-mail does not, by itself, make the e-mail privileged,[39] (d) merely attaching something to a privileged document does not, by itself, make the attachment privileged,[40] (e) the party arguing that a document is privileged has the burden of establishing privilege with respect to each and every document;[41] and (f) claims of attorney-client privilege must be asserted on a document by document basis.[42]   Attempts to reargue such matters will not be permitted.  To the extent that there remain any disagreements after the parties have had an opportunity to meet and confer, an appropriate application may once again be brought before this Court.

---

[38] See, e.g., Matter of Bekins Record Storage Co., Inc., 465 N.E.2d at 348 ("One who seeks out an attorney for business or personal advice may not assert a privilege as to those communications.").

[39] See, e.g., In re Avantel, S.A., 343 F.3d 311, 321 n. 11 (5th Cir. 2003) ("e-mails in which in-house or outside attorneys are merely sent copies of the text of the e-mail, or in which they are merely one of many addresses, should not be privileged, unless the e-mail is directed to the attorney or sent by the attorney . . . . To rule otherwise would allow parties to evade the privilege limitations by sending copies of every company-generated e-mail to the company's attorney so as to protect the communication from discovery, regardless of whether legal services were sought or who the other recipients of the e-mail were.") (citation omitted).

[40] See, e.g., Leonen v. Johns-Manville, 135 F.R.D. 94, 98 (D.N.J.1990).

[41] See, e.g., Priest, 51 N.Y.2d at 69.

[42] See, e.g., Rockwell Intern., 897 F.2d 1255, 1265 (3d Cir. 1990) (explaining that "claims of attorney-client privilege must be asserted document by document, rather than as a single, blanket assertion.").

## <u>CONCLUSION</u>

Based on the reasons set forth above, Plaintiffs' motion to compel is granted in part and

denied in part.  An appropriate Order accompanies this Opinion.


|                                        | /s/   Mark Falk                              |
| -------------------------------------- | -------------------------------------------- |
| DATE:  December 12, 2008               | **MARK FALK**                                |
|                                        | **United States Magistrate Judge**           |

Orig.:  Clerk of the Court
cc:     Hon. William J. Martini, U.S.D.J.
        All Parties
        File

23