NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: HUMAN TISSUE PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>*Kennedy-McInnis, et al. v. Biomedical Tissue Services, Ltd., et al.*, Civil Action No. 06-5140<br><br>*Fetzer, et al. v. Biomedical Tissue Services, Ltd., et al.*, Civil Action No. 08-3786<br><br>*Wilson, et al. v. Biomedical Tissue Services, Ltd., et al.*, Civil Action No. 08-5153 | Docket No. 06-cv-135 (WJM)<br><br>MDL No. 1763<br><br>OPINION<br><br>HON. WILLIAM J. MARTINI |

**MARTINI, U.S.D.J:**

This is a motion for class certification brought by Plaintiffs in the *Kennedy-McInnis, et al. v. Biomedical Tissue Services, Ltd., et al.* action, pursuant to Federal Rule of Civil Procedure 23.[1] Defendants Regeneration Technologies, Inc. ("RTI"), Tutogen Medical (United States), Inc. ("Tutogen"), Profetta Funeral Home, Burger Funeral Home, and James McCafferty (collectively "the Funeral Home Defendants") oppose. For the reasons that follow, Plaintiffs' motion for class certification is **DENIED**. Plaintiffs fail to

---

[1] Plaintiffs in the *Fetzer, et al. v. Biomedical Tissue Services, Ltd., etc.* and *Martha Wilson, et al. v. Biomedical Tissue Services, Ltd., et al.* filed a notice with the Court to join the *Kennedy-McInnis* Plaintiffs' motion for class certification. They submitted no additional briefing or factual support for the class certification motion. Since neither the *Fetzer* nor *Wilson* Plaintiffs make any arguments or representations, the Court will focus solely on the *Kennedy-McInnis* complaint and briefing.

1

satisfy the typicality and adequacy requirements set forth in Federal Rule of Civil Procedure 23(a). Further, even Plaintiffs could make the requisite Rule 23(a) showing, they fail to meet the provisions of either Rule 23(b)(1)(B) or 23(b)(3). Accordingly, class certification is not warranted in this instance.

I.   BACKGROUND

The putative class as set forth by the *Kennedy-McInnis* amended complaint is comprised of thirteen individual plaintiffs, each of whom had a relative allegedly mishandled by Biomedical Tissue Services ("BTS"). According to the named representative plaintiffs, each of the decedents' bodies went to one of three funeral homes located in New York: Serenity Hill's Funeral Home, Inc., Thomas E. Burger Funeral Home, Inc., and Profetta Funeral Home. The plaintiffs claim that the funeral homes, after taking possession of the bodies, allowed BTS to extract bones and tissue from the decedents. Following this, the harvested tissue then allegedly was given to RTI, Tutogen, LifeCell, the Blood and Tissue Center of Central Texas, and Lost Mountain Tissue Bank.[2]

The *Kennedy-McInnis* plaintiffs assert six causes of action in their amended complaint: (1) violation of 21 CFR §§ 1270, et seq. (against BTS only); (2) mishandling and desecration of a corpse (against all Defendants); (3) breach of contract (against the Funeral Home Defendants); (4) breach of the implied covenant of good faith and fair

---

[2] Tutogen and BCCT are no longer defendants in the *Kennedy-McInnis* action. Their motion for summary judgment based on standing was granted in November 2007. (Docket No. 30).

dealing (against the Funeral Home Defendants); (5) intentional infliction of emotional distress (against the Funeral Home Defendants); and (6) negligence (against all Defendants).  The purported class consists of "all next of kin relatives of decedents whose bodies were desecrated by BTS for the harvesting and sale of human body parts." (Am. Compl. ¶ 31.)

## II.    DISCUSSION

Rule 23(a) sets forth four requirements that must be satisfied by a party seeking class certification: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a). These four requirements are referred to, respectively, as "numerosity," "commonality," "typicality," and "adequacy."  Plaintiffs bear the burden of proving that each of the Rule 23(a) factors are met. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 n.5 (3d Cir. 2008).

In addition to satisfying the four requirements of Rule 23(a), Plaintiffs must demonstrate that one of the provisions of Rule 23(b) is met.  Here, Plaintiffs seek certification under either Rules 23(b)(1)(B) or 23(b)(3).  Rule 23(b)(1) provides that a class action may be maintained if:

> prosecuting separate actions by or against individual class members would create a risk of ... adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to

protect their interests.

Fed. R. Civ. P. 23(b)(1).

Rule 23(b)(3) provides for certification where: "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

In the instant case, Plaintiffs have failed to satisfy the third and fourth requirements of Rule 23(a). Further, even if Plaintiffs had satisfied Rule 23(a), their motion still would fail, since they do not meet the requirements of either Rule 23(b)(1)(B) or 23(b)(3).

### A. Rule 23(a) Requirements

Assuming for the sake of this motion that Plaintiffs could satisfy the first two Rule 23(a) requirements – numerosity and commonality – the Court still must assess whether they have met their burden of demonstrating typicality and adequacy.

#### 1. *Typicality*

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Since the Court cannot "assess whether an individual is sufficiently similar to the class as a whole without knowing something about both the individual and the class, [it] must consider the attributes of the proposed representatives, the class as a whole, and the similarity between the proposed representatives and the class." *In re Schering Plough Corp. ERISA Litig.*,

589 F.3d 585, 597 (3d Cir. 2009). "This investigation properly focuses on the similarity of the legal theory and legal claims; the similarity of the individual circumstances on which those theories and claims are based; and the extent to which the proposed representative may face significant unique or atypical defenses to her claims." *Id.* at 597-98.

After review of the amended complaint and Plaintiffs' briefing in support of certification, it is apparent that highly individualized nature of the claims in this action preclude a finding of typicality. First, Plaintiffs assert emotional distress claims against the funeral homes that handled the donor decedents' remains and the tissue processors who allegedly received the harvested tissue. The Third Circuit has stated that class certification is inappropriate in mass tort claims because they present questions of individualized issues of liability. *In re LifeUSA Holding Inc.*, 242 F.3d 136, 145 (3d Cir. 2001); *see also Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 628 (3d Cir. 1996) (observing that mass torts involving a single accident may be amenable to class action treatment, but that "the individualized issues can become overwhelming in actions involving long-term mass torts (i.e., those which do not arise out of a single accident)."). This is particularly true in the instant context, where the tort claims alleged are premised on emotional distress. The factual circumstances underlying each of these Plaintiffs' individual claims – including but not limited to Plaintiffs' relationships with the decedents and the injuries allegedly suffered as a result of Defendants' actions – are sufficiently personal and specific as to prevent any finding of similarity with regard to their claims, let alone the claims of numerous other unnamed plaintiffs throughout

5

Pennsylvania and New Jersey.[3]

Akin to the emotional distress claims, the desecration claim asserted against all Defendants likely entails different factual issues for each decedent.  For example, the circumstances of decedents' deaths, the procedures performed post-mortem, the tissue and/or bone removed, and the appearance of the decedents after the procedures will be individualized and unique, further militating against a finding of typicality.

Finally, Plaintiffs bring contractual claims against the three funeral home defendants, which again hinge on different factual circumstances that also may give rise to different defenses.  Essentially, Plaintiffs' complaint alleges thirteen personal wrongs arising from individual contracts made with three funeral homes concerning final arrangements for the donor decedents in question.  There is no allegation that these contracts were similar; in fact, since they were drafted and negotiated by different funeral home representatives and family members, they likely contained different representations, subject to different defenses. For example, these meetings between funeral home personnel and the decedents' family members involved representations regarding services requested and potential tissue donation. These are all very personalized discussions.  Those Pennsylvania, New Jersey, and New York City funeral

---

[3] Defendants RTI and Profetta mention in their briefing that many of the purported class members may not have standing to sue as a matter of New York law, since they cannot establish the next-of-kin relationship requisite for their desecration actions.  The Court is mindful of this; however, in the absence of any factual demonstration that these plaintiffs are not next-of-kin under New York law, the Court cannot rule on this issue presently.  For example, while Profetta states in its briefing that Plaintiff Laurie Stathopoulous lacks standing since she is not the proper next-of-kin for her grandmother, decedent Jean Guerinot, nothing in the attached deposition testimony establishes that Stathopoulous has any *surviving* relatives who more proximally related to decedent such that they are proper next-of-kin. *See* Decl. of Andrew P. Keaveney, Exhibit C.

homes that Plaintiffs seek to bring into this action as defendants would only add new and different contract language and representations upon which claims and defenses would be based. Here, there are sufficient factual differences among the thirteen contracts negotiated with three different funeral homes to preclude a finding of typicality. *See In re Schering Plough*, 589 F.3d at 598 ("Ensuring that absent class members will be fairly protected required the claims and defenses of the representative to be sufficiently similar not just in terms of their legal form, but also in terms of their factual basis and support."); *see also In re LifeUSA Holding, Inc.,* 242 F.3d at 144-46 (vacating class certification in part because plaintiffs' claims of deceptive insurance sales practices arose from individual and nonstandardized presentations by numerous independent agents).

While the Court acknowledges that "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory," *Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912, 923 (3d Cir. 1992), here Plaintiffs have failed to demonstrate, other than through a bald assertion, that any practice or course of conduct existed among the funeral homes or among the tissue processors. Accordingly, Plaintiffs have failed to demonstrate typicality as required to sustain their motion for certification.

    2.    *Adequacy*

The final Rule 23(a) class certification prerequisite, Rule 23(a)(4), requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry "has two components designed to ensure

7

that absentees' interests are fully pursued." *See Georgine v. Amchem Prods., Inc.,* 83 F.3d 610, 630 (3d Cir.1996). First, the adequacy inquiry "tests the qualifications of the counsel to represent the class." *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 532 (3d Cir.2004) (internal citations omitted). No issue has been raised regarding the adequacy of Plaintiffs' counsel for purposes of representing the class.

The second component of the adequacy inquiry seeks "to uncover conflicts of interest between named parties and the class they seek to represent." *Id.* There are clear similarities between the components of the typicality inquiry relating to the absence of unique defenses and alignment of interests, and this second part of the adequacy inquiry that focuses on possible conflicts of interest. "Because of the similarity of [the typicality and adequacy] inquiries, certain questions-like whether a unique defense should defeat class certification-are relevant under both." *Beck v. Maximus, Inc.*, F.3d 291, 296 (3d Cir. 2006).

As discussed with regard to typicality, it is evident from the face of Plaintiffs' amended complaint and the briefing that their claims hinge on highly individualized factual scenarios, each subject to different potential defenses. Where class representatives' claims are not typical of the class, they may have different incentives to spend time, energy, and resources to pursue particular claims. *In re Schering Plough*, 589 F.3d at 602.

The Court is particularly mindful of these differing incentives in the instant case, where Plaintiffs bring unique claims against the Serenity, Burger, and Profetta Funeral Homes in upstate New York. In addition to these contractual claims, these putative class

representatives each allege to have suffered emotional distress injuries based on their personal relationship with the donor decedents in question. Given the individualized nature of both categories of claims, the Court recognizes that the putative class representatives may have a lesser incentive to prove the existence of unique, and likely dissimilar, injuries allegedly suffered by the absent class members, many of whom would appear to be in New Jersey and Pennsylvania. As such, the Court determines that Plaintiffs have failed to meet their burden of demonstrating that the adequacy requirement of Rule 23(a)(4) is met. Having determined that typicality and adequacy are lacking, Plaintiffs' motion must be denied, as failure to meet any Rule 23(a) requirement precludes certification. *See, e.g., In re LifeUSA Holding, Inc.*, 242 F.3d at 147.

    B.    <u>Rule 23(b) Requirements</u>

Even assuming that Plaintiffs met their burden of demonstrating the Rule 23(a) factors, they nonetheless fail to demonstrate that their class meets one of the categories enumerated in Rule 23(b). While Plaintiffs contend that their putative class satisfies either Rule 23(b)(1)(B) or 23(b)(3), the Court disagrees.

    1.    *Rule 23(b)(1)(B) – Effect on Class Members*

Under Rule 23(b)(1)(B), class certification is appropriate when the prosecution of separate actions would, as a practical matter, "be dispositive of the interests of other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B). The Rule contemplates certification in "situations where the judgment in a nonclass action by or against an individual member of the class, while not technically concluding the other

members, might do so as a practical matter." Rules Advisory Committee Notes to 1966 Amendments to Rule 23, 39 F.R.D. 69, 101 (1966).

Certification under subdivision (b)(1)(B) is inappropriate here. Subsection (b)(1)(B) is generally used where there is a "common fund" for damages and payment from the fund to some members of a class would have practical effects on the interests of other members. *PBA Local No. 38 v. Woodbridge Police Dep't,* 134 F.R.D. 96, 103 (D.N.J.1991) (denying certification under (b)(1)(B) because "there is no 'common fund' or anything akin thereto, the most common use of this subsection, which indicates that prejudice would result as a practical matter to members not party to the adjudication"); *See* 2 NEWBERG ON CLASS ACTIONS § 4.9 (4th Ed. 2002) (same).

Plaintiffs have made no showing here that prejudice would result as a practical matter to those members not a party to the adjudication, *e.g.,* where an apportionment or determination of the interests of one class member in a fixed asset or piece of property cannot be made without affecting the proportionate interests of the other class members similarly situated. *See* Newberg at § 4.09. Instead, they baldly state that "[o]ne can assume that defendants do not have unlimited resources to pay compensatory as well as punitive damages." Pl.'s Br. 9. This "assumption" is insufficient in and of itself to compel certification under Rule 23(b)(1)(B).

2.  *Rule 23(b)(3) – Predominance and Superiority*

Under Rule 23(b)(3), the Court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).[4] These are the "twin requirements" of predominance and superiority. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008).

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623. "Issues common to the class must predominate over individual issues...." *In re Prudential Ins. Co. Am. Sales Practice Litig.,* 148 F.3d 283, 313-14 (3d Cir.1998). "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 172 (3d Cir. 2001).

As discussed above, consideration of Plaintiffs' claims hinges on their individual factual circumstances, i.e., contractual arrangements, personal relationships with the decedents, injuries suffered. Plaintiffs offer nothing in the papers to demonstrate otherwise. *See* Pl.'s Br. 9.

Likewise, Plaintiffs have not demonstrated superiority. The superiority inquiry compels the Court "to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Danvers Motor Co., Inc. v. Ford Motor Co.*, 543 F.3d 141,149 (3d Cir. 2008). Here, "[t]he multitude of individualized issues presented in plaintiffs' claims would entail complicated mini-

---

[4] Rule 23(b)(3) identifies some "matters pertinent to these findings": "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D).

litigations within the class action itself." *Id.* As such, the claims presented by these Plaintiffs and their unique factual underpinnings would require such extensive individual consideration that "it would be neither more fair nor more efficient to proceed with this matter as a class action." *Id.*; Fed. R. Civ. P. 23(b)(3)(D).  As such, Plaintiffs have demonstrated neither the predominance nor superiority factors required under Rule 23(b)(3).

## III.  CONCLUSION

For the foregoing reasons, the *Kennedy-McInnis* motion for class certification is **DENIED**, as is the motion brought by Plaintiffs in the *Fetzer* and *Wilson* actions.  An Order follows this Opinion.


       /s/ William J. Martini
      **WILLIAM J. MARTINI, U.S.D.J.**


Date:  March 2, 2010